IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWSON PRODUCTS, INC., | ) |
| Plaintiff, | ) No. 17 C 1250 |
| v. | ) Jeffrey T. Gilbert<br>) Magistrate Judge |
| MIDWEST MOTOR SUPPLY COMPANY<br>d/b/a KIMBALL MIDWEST, | ) |
| Defendant. | ) |

## ORDER

Plaintiff Lawson Products, Inc. ("Plaintiff") and Defendant Midwest Motor Supply Company d/b/a Kimball Midwest ("Defendant") are competing industrial distributors of maintenance and repair supplies. Defendant's Brief in Support of Its Motion for Protective Order regarding Plaintiff's First Set of Requests for Interrogatories ("Defendant's Brief"), [ECF No. 27], at 3; Plaintiff's Response and Memorandum in Opposition to Defendant's Motion for Protective Order to Plaintiff's First Set of Interrogatories ("Plaintiff's Response"), [ECF No. 29]. Plaintiff has sued Defendant for copyright infringement (Count I), trademark infringement (Count II), trademark and trade dress infringement (Count III), violations of the Illinois Uniform Deceptive and Unfair Trade Practices Act (Count IV) and the Illinois Consumer Fraud and Deceptive Business Practices Act (Count V), and tortious interference with prospective advantage (Count VI). Complaint for Injunctive and Other Relief ("Complaint"), [ECF No. 1].

On August 16, 2017, Plaintiff served its First Set of Interrogatories. Plaintiff's First Set of Requests for (sic) Interrogatories ("Plaintiff's First Set of Interrogatories"), [ECF No. 27-1]. The First Set contained five interrogatories and provided that, for each one, the time frame was from August 17, 2012 to the present, unless otherwise specified. *Id.* at 8. This matter is now before the Court on Defendant's Motion for Protective Order regarding Plaintiff's First Set of Requests for Interrogatories ("Defendant's Motion"), [ECF No. 26].

I.

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party can seek discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." FED. R. CIV. P. 26(b)(1). Rule 26(c) permits a party to move for a protective order to prevent the disclosure or discovery of certain materials. FED. R. CIV. P. 26(c). The court, in turn, may grant such a motion where there is "good cause" to enter the protective order. *Clark v. City of Chicago*, 2010 WL 9941375, at *1 (N.D. Ill. Oct. 13, 2010) (quoting FED. R. CIV. P. 26(c)). The movant bears a heavy burden to prove, through specific facts, that good cause exists. *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015); *Chicago Mercantile Exch., Inc. v. Tech. Research Grp.,*

*LLC*, 276 F.R.D. 237, 241 (N.D. Ill. 2011). Ultimately, the court must exercise its sound discretion to determine whether a protective order should be entered and, if so, what degree of protection is appropriate. *Nieves v. OPA, Inc.*, 948 F. Supp. 2d 887, 891 (N.D. Ill. 2013); *State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 521 (N.D. Ind. 2009); *Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003).

II.

In its Motion, Defendant identifies three supposed problems with Plaintiff's First Set of Interrogatories. First, Defendant argues the time frame for all five interrogatories should be narrowed. Second, Defendant says Interrogatory Nos. 1 and 2 are vague and overbroad, seek irrelevant information, and impose an undue burden. Third, Defendant claims Interrogatory No. 3 seeks irrelevant information. The Court will address each issue in turn.

A.

In Plaintiff's First Set of Interrogatories, Plaintiff directed that the relevant time frame for each interrogatory was August 17, 2012 to the present, unless otherwise specified. Plaintiff's First Set of Interrogatories, [ECF No. 27-1], at 8. Defendant argues that this time frame is overly broad and disproportionate because it will sweep in significant amounts of irrelevant information. Defendant instead proposes that the appropriate time frame for discovery is August 17, 2016 to the present. Plaintiff, though, continues to defend the time frame set foth in its First Set of Interrogatories. Plaintiff's Response, [ECF No. 29], at 3, 9.

The scope of discovery in this case is determined by the parties' claims and defenses. FED. R. CIV. P. 26(b)(1). For the purposes of the parties' present dispute, it is Plaintiff's claims that matter. Plaintiff's Complaint focuses mostly on one allegedly infringing document that Plaintiff first learned about in January 2017. Complaint, [ECF No. 1], ¶¶ 33–37. Defendant represents, and Plaintiff does not dispute, that Defendant created the document in December 2016. Defendant's Reply in Support of Its Motion for Protective Order regarding Plaintiff's First Set of Requests for Interrogatories ("Defendant's Reply"), [ECF No. 31], at 2 *see also* [ECF No. 1-9] (seeming to cite data from 2016). Plaintiff also alleges in its complaint that, "since March 15, 2015," Defendant's website "has evolved . . . to coattail upon [Plaintiff's] good will." *Id.* ¶ 37. Finally, Plaintiff alleges on information and belief that Defendant "has other marketing and sales materials that refer to, describe, or cast [Plaintiff] in a negative light," including a document comparing the parties' businesses. *Id.* ¶ 38. It appears Plaintiff has obtained one such document in discovery that includes a "SINCE 2012 COMPARISON" between the two companies and, according to Plaintiff, relies on information for the time period from 2012 to 2017. Plaintiff's Response, [ECF No. 29], at 3. Defendant claims the document was updated for internal use only in March 2016 but does not say when the document was created or describe the document's content. Defendant's Reply, [ECF No. 31], at 2.

Defendant argues good cause exists to prohibit discovery on all issues before December 2016. Defendant focuses on this date because that is the month when it created the first allegedly infringing document described above, which is the focus of Plaintiff's Complaint. Defendant criticizes Plaintiff's five-year discovery period as excessive given that there are no allegations in the Complaint that reference a date earlier than March 15, 2015, and the statute of limitations on Plaintiff's infringement claims is just three years, *see Sand Hill Advisors, LLC v. Sand Hill*

2

*Advisors, LLC*, 680 F. Supp. 2d 1107, 1116 (N.D. Cal. 2010). Defendant also argues particular caution is required with respect to identifying an appropriate time frame for discovery because of the breadth of Plaintiff's interrogatories as measured against Plaintiff's relatively narrow claims. Defendant proposes that, as somewhat of a compromise, discovery be limited to the period from August 17, 2016 to the present.

The Court agrees with the fundamental proposition underlying Defendant's argument, which is that discovery should be limited in time based on the specific claims and defenses in this case. *See Van Cleef & Arples Logistics, S.A. v. Festival Marketplace*, 2008 WL 4753690, at *3 (S.D. Fla. Oct. 29, 2008) ("If Plaintiffs are only aware of one date, then that is the 'time-frame' for current purposes."). The Court, though, does not believe discovery should be quite as temporally limited as Defendant proposes because Defendant's suggested start date does not account for either the allegation in the Complaint that Defendant's website has evolved since March 15, 2015 or the fact that Defendant updated an allegedly infringing document in March 2016. To allow for discovery of information relevant to all of Plaintiff's claims, including the allegations related to Defendant's website, the Court concludes that, as a general matter, the appropriate time period for discovery in this case is March 1, 2015 through the present.

Plaintiff does not offer any reason for a longer time period that the Court finds to be convincing. Plaintiff claims Defendant has served interrogatories and requests for production of documents that are unlimited in time, but Defendant's counsel told Plaintiff that the written discovery requests only sought information for the past year. Defendant's Reply, [ECF No. 31], at 7 n.8.[1] And no motion has been filed as to those requests. Plaintiff says the one document specifically alleged to be infringing is "untimed." As already noted, though, Defendant represents the document was created in December 2016 and it indisputably contains data from 2016. Somewhat relatedly, Plaintiff asserts that unknown infringing documents could have been created during the past five years and that it could take advantage of the discovery rule to toll the statute of limitations if it discovered them.[2] This argument is not tied to specific allegations in the Complaint, and the Court will not permit Plaintiff to conduct a fishing expedition based on speculation untethered to factual allegations in the Complaint. *See Sirazi v. Panda Express, Inc.*, 2009 WL 4232693, at *4 (N.D. Ill. Nov. 24, 2009) ("Indeed, the Seventh Circuit has often said that 'discovery is not to be used as a fishing expedition.'") (quoting *E.E.O.C. v. Harvey L. Walner & Associates*, 91 F.3d 963, 971–972 (7th Cir. 1996)).

Plaintiff's most tailored justification for seeking discovery during a five-year period rests on 15 U.S.C. § 1052(f), which establishes an evidentiary standard that the director of the United States Patent and Trademark Office may use when determining if a prima facie case of distinctiveness has been made. Based on this provision, Plaintiff says it needs five years of discovery to show its trade dress has secondary meaning. What Plaintiff does not mention is that this statutory provision applies to registration of marks and is not germane in an infringement

---

[1] Defendant has reserved the right to seek discovery going back farther in time if the Court orders discovery for more than one year. Defendant's Reply, [ECF No. 31], at 7 n.8.

[2] Plaintiff does not mention that "the statute of limitations for tortious interference with prospective economic advantage in Illinois is five years." *Integrated Genomics, Inc. v. Kyrpides*, 2010 WL 375672, at *13 n.14 (N.D. Ill. Jan. 26, 2010); *see also Colucci v. Chicago Crime Comm'n*, 334 N.E.2d 461, 470 (Ill. App. Ct. 1975).

case when a mark is unregistered. *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1116 (N.D. Cal. 2010).

For all of these reasons, the Court concludes that, as a general matter, the appropriate scope of discovery in this case is from March 1, 2015 to the present.

B.

Interrogatory No. 1 asks Defendant to describe "the circumstances . . . regarding Defendant's decision to product (sic), and use internally [PLAINTIFF'S] COPYRIGHTS, MARKS AND TRADE DRESS." Plaintiff's First Set of Interrogatories, [ECF No. 27-1], at 9. Interrogatory No. 2 asks Defendant to identify and provide information about marketing, sales, advertising, and promotional use "of [PLAINTIFF'S] COPYRIGHTS, MARKS AND TRADE DRESSS."[3] *Id.* The definition of the term "[PLAINTIFF'S] COPYRIGHTS, MARKS AND TRADE DRESS" is lengthy. *Id.* at 3–4. For present purposes, the important part is that "Plaintiff's Trade Dress" is defined to mean: "a distinctive and recognized combination of color arrangement of yellow and brown as part of its overall branding, continuously and exclusively for decades as part of the catalogs, the website, marketing materials, and advertising." *Id.* at 4.

Defendant found Plaintiff's definition of its trade dress to be confusing and asked Plaintiff to clarify what materials Plaintiff was requesting in Interrogatory Nos. 1 and 2. Apparently Plaintiff said these interrogatories seek all materials created by Defendant that include any shade of yellow and/or brown. Defendant's Brief, [ECF No. 27], at 5, 9; *see also* Plaintiff's Response, [ECF No. 29], at 11–13. The Court finds Plaintiff's response to be somewhat perplexing. By their plain terms, Interrogatory Nos. 1 and 2 seek information related to the use of Plaintiff's copyrights, marks, and trade dress. Of course, neither its copyrights nor its marks cover all materials that include any shade of yellow and/or brown. Plaintiff's interpretation of the interrogatories thus must hinge on the definition of trade dress. As noted above, however, the First Set of Interrogatories defines Plaintiff's trade dress to be "a distinctive and recognized combination" of those two colors. Plaintiff's response to Defendant's question thus appears to expand to a significant degree, rather than merely clarify or narrow, the scope of Interrogatory Nos. 1 and 2.

Defendant objects to Interrogatory Nos. 1 and 2 as reformulated by Plaintiff. Defendant argues that the request for materials that include any shade of yellow and/or brown encompasses clearly irrelevant information. In response, Plaintiff asserts in a conclusory fashion that the material with either color is relevant to its trade dress claim. Plaintiff's own complaint, however, is not consistent with this argument. In that pleading, Plaintiff describes its trade dress as being "a distinctive and recognized arrangement of yellow and brown as part of its overall branding," a "combination of colors," and "[Plaintiff's] distinctive yellow and brown branding." Complaint,

---

[3] Interrogatory No. 2 reads in full: "Identify marketing and/or sales, advertising and other promotional activities and/or programs, publications (including but not limited to leaflets, catalogs, brochures, telephone directories, print media and television, internet or radio broadcasts), collectively, ('Infringing documents') in which Defendant has made use of LAWSON COPYRIGHTS, MARKS AND TRADE DRESS and state the date, volume, and page numbers or other identification of those Infringing documents." Plaintiff's First Set of Interrogatories, [ECF No. 27-1], at 9.

4

[ECF No. 1], ¶ 29. Plaintiff has not alleged a trade dress claim based on the use of brown or yellow separately. The Court is not convinced that a document is relevant to Plaintiff's claims solely because it includes one of those colors. In fact, as Defendant points out, Plaintiff's request would encompass "nonsensical, and decidedly not relevant, information," including photos of a toy rooster and yellow and brown spools of wire. Defendant's Brief, [ECF No. 27], at 1; Exhibit B to Defendant's Brief, [ECF No. 27-2].

Defendant also asserts that, as reformulated, Interrogatory Nos. 1 and 2 are unduly burdensome. Defendant's logo includes brown and, since at least 1984, one of its corporate colors has been a bright yellow. Defendant's Brief, [ECF No. 27], at 11–12; Defendant's Reply, [ECF No. 31], at 5. As a result, Defendant says, "nearly every marketing and promotional material, company letter head, business cards, and internal presentations, handouts, training materials, and similar materials" and most of its employees' emails have either yellow or brown in them. Defendant's Brief, [ECF No. 27], at 12. According to Defendant, searching through this mountain of documents would be particularly burdensome because it is not aware of an eDiscovery tool that can identify colors, meaning Defendant would have to manually review documents to determine if they include yellow or brown. *Id.* In response, Plaintiff's only argument is that Defendant has not made a detailed enough showing of the burden imposed by Interrogatory Nos. 1 and 2. The Court disagrees. Although Defendant has not quantified in dollar terms the cost of complying with these two interrogatories, the facts described above show as a matter of common sense that the burden could be excessive and disproportionate to the needs of the case.

Defendant's last argument is that Plaintiff's definition of its trade dress in the First Set of Interrogatories, even before Plaintiff seemingly expanded it, is vague. Neither party addresses this issue well. The Court, though, agrees with Defendant that the definition of Plaintiff's trade dress is so general and amorphous as to frustrate Defendant's ability to respond effectively to the interrogatories. As Defendant points out, the definition is not limited to certain shades of yellow or brown that either are part of Plaintiff's trade dress or could be confused for the shades that are part of Plaintiff's trade dress. More importantly, the definition refers to "a distinctive and recognized combination of color arrangement of yellow and brown" without describing what is distinctive and recognized about the combination or providing any guidance as to how to identify the distinctive combination. The Court does not see how Defendant can determine whether a given combination of yellow and brown is encompassed by Plaintiff's definition of its trade dress. Therefore, for all of these reasons, the Court grants Defendant's request for a protective order with respect to Interrogatory Nos. 1 and 2. The Court will not engage in the exercise of trying to rewrite Plaintiff's interrogatories so they pass muster. The parties can discuss that themselves.

C.

Interrogatory No. 3 asks Defendant to identify and provide information about marketing, sales, advertising, and promotions "in which Defendant referred to or described a competitor, other than [Plaintiff], in a negative light or comparatively as to the sale of goods and/or services by this competitor."[4] Plaintiff's First Set of Interrogatories, [ECF No. 27-1], at 9. Defendant

---

[4] Interrogatory No. 3 reads in full: "Identify marketing and/or sales material, advertising and other promotional activities and/or programs, publications (including but not limited to leaflets, catalogs,

5

argues this type of comparative advertising information regarding competitors other than Plaintiff is not relevant to any claim or defense in this case. In response, Plaintiff argues the information is relevant to Defendant's state of mind because the information will show whether Defendant engaged in a targeted, willful, and systematic program of violating intellectual property rights. There is no basis alleged in the Complaint for such speculation.

At most, information related to supposed infringement on the works of competitors other than Plaintiff is minimally relevant to whether Defendant acted willfully and intentionally when engaging in the conduct at issue in this case. *See Boehm v. Scheels All Sports, Inc.*, 2016 WL 1559183, at *1–2 (W.D. Wis. Apr. 15, 2016). Interrogatory No. 3 is not limited to information regarding actual infringement, accusations of infringement, or instances where infringement was likely to have occurred. Instead, the interrogatory broadly seeks information about instances where Defendant cast a competitor in a negative light or compared Defendant with a competitor. Even if the Court were to accept Plaintiff's theory that past infringement of non-parties' works is relevant to Defendant's intent and willfulness in allegedly infringing Plaintiff's copyrights and marks, that theory would not make the type of comparative advertising information actually sought in Interrogatory No. 3 relevant. Therefore, the Court grants Defendant's request for a protective order with respect to Interrogatory No. 3.[5]

III.

For the reasons stated above Defendant's Motion for Protective Order regarding Plaintiff's First Set of Requests for Interrogatories [ECF No. 26] is granted in part and denied in part.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: December 8, 2017

---

brochures, telephone directories, print media and television, internet or radio broadcasts, email blasts) in which Defendant referred to or described a competitor, other than Lawson, in a negative light or comparatively as to the sale of goods and/or services by this competitor." Plaintiff's First Set of Interrogatories, [ECF No. 27-1], at 9.

[5] Although Defendant's argument with respect to Interrogatory No. 3 is phrased in terms of relevance, the Court understands the logic of Defendant's argument to raise breadth and proportionality concerns as well. Defendant asserted breadth and proportionality objections in its response to Interrogatory No. 3. Defendant's Responses and Objections to Plaintiff's First Set of Requests for Interrogatories, [ECF No. 31-1], at 9.